UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KEVIN R.,[1]

                                                Plaintiff,        Case # 20-cv-6533-FPG

v.                                                                            DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,
                                              Defendant.
_____

**INTRODUCTION**

On June 27, 2016, Plaintiff Kevin R. protectively applied for Disability Insurance Benefits under Title II of the Social Security Act (the "Act") Tr.[2] 24. The Social Security Administration (the "SSA") denied his claim and Plaintiff appeared with counsel at a hearing before Administrative Law Judge Andrew J. Soltes, Jr. on December 13, 2018. Tr. 36. At the hearing, Plaintiff and a vocational expert testified. On February 7, 2019, the ALJ issued an unfavorable decision. Tr. 21. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the SSA. Tr. 1. Plaintiff then appealed to this Court.[3] ECF No. 1.

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 11, 12. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and the ALJ's decision is REMANDED to the Commissioner for further administrative proceedings.

---

[1] In order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff using only his first name and last initial in accordance with this Court's Standing Order issued November 18, 2020.

[2] "Tr." refers to the administrative record in this matter. ECF No. 8.

[3] The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

**LEGAL STANDARD**

**I.     District Court Review**

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

**II.    Disability Determination**

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of her age, education, and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. § 404.1520.

**DISCUSSION**

**I.       The ALJ's Decision**

The ALJ analyzed Plaintiff's claim for benefits using the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 21, 2016, the alleged onset date. Tr. 26. At step two, the ALJ found that Plaintiff has the following severe impairments: ischemic heart disease, asthma, chronic sinusitis, osteopenia, diabetes, and obesity. Tr. 26.

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments. Tr. 26. The ALJ determined that Plaintiff maintained the RFC to perform sedentary work. Tr. 27. However, the ALJ found that Plaintiff had non-exertional physical limitations including that Plaintiff is limited to occupations where the exposure to dust, fumes, gases, and other pulmonary irritants is consistent with those found in a standard office environment. Tr. 27.

At step four, the ALJ concluded that Plaintiff could perform past relevant work as a customer service complaint clerk, which does not require the performance of work-related activities precluded by Plaintiff's RFC. Tr. 30. At step five, the ALJ concluded that there were jobs that existed in the economy that Plaintiff could perform, including jobs that had a wide range of medium exertional work with a low stress setting. Tr. 30. As such, the ALJ found that Plaintiff was not disabled.

**II.      Analysis**

Plaintiff takes issue with the ALJ's decision on the basis that the ALJ failed to properly weigh the "off-task" assessments of Li-Xing Man, M.D., and James Murray, D.O. ECF No. 12 at 14. The Court agrees that remand is required.

In assessing Plaintiff's RFC, the ALJ addressed the expert opinions of four medical sources: consultative examiner Harbinder Toor, M.D., Tr. 490-93, and a Texas state medical consultant Natasha Temple, M.D., Tr. 495-96, whose opinions the ALJ provided significant weight, and treating physicians Dr. Li-Xing Man, Tr. 906-09, and Dr. James Murray, Tr. 706-09, whose off-task assessment opinions he gave no weight. Tr. 29. The Court is most concerned with the ALJ's consideration of the off-task limitations given by Drs. Man and Murray.

Dr. Man was Plaintiff's treating otolaryngologist and Dr. Murray was his treating pulmonologist. Dr. Man diagnosed Plaintiff with marked chronic sinusitis and treated Plaintiff's post-sinonasal surgery. Tr. 300, 302. Dr. Murray diagnosed Plaintiff with severe persistent and prednisone dependent asthma. Tr. 270. Both treating physicians completed medical source statements regarding Plaintiff's ability to work. *See* Tr. 706-09, 906-09.

In his medical source statement, Dr. Murray noted that Plaintiff's symptoms included: shortness of breath, chest tightness, wheezing, episodic acute asthma, and coughing. Tr. 706. Dr. Murray opined that Plaintiff must avoid moderate exposure to extreme cold, extreme heat, wetness, and high humidity. Tr. 708. Dr. Murray also opined that Plaintiff should avoid all exposure to cigarette smoke, perfumes, soldering fluxes, solvents/cleaners, fumes, odors, gases, dust, and chemicals. Tr. 708. Finally, Dr. Murray concluded that Plaintiff would be "off-task" for at least twenty percent of a typical workday, Plaintiff would have "good days" and "bad days," and that Plaintiff would miss more than four days of work per month because of his impairments. Tr. 708-09.

In Dr. Man's medical source statement, he opined that Plaintiff has chronic sinusitis, nasal polyposis, hyposmia, asthma, and aspirin sensitivity. Tr. 906. Dr. Man then opined that Plaintiff can frequently carry less than ten pounds and can occasionally lift up to fifty pounds. Tr. 908. Dr.

Man also found that Plaintiff can occasionally twist, stoop, crouch, squat, climb ladders, and climb stairs. Tr. 908. Dr. Man then opined that Plaintiff should avoid concentrated exposure to extreme cold, extreme heat, high humidity, wetness, cigarette smoke, perfumes, soldering fluxes, solvents/cleaners, fumes and odors and gases, dust, and chemicals. Tr. 908. Finally, Dr. Man opined that Plaintiff would be "off-task" for ten percent of in a typical workday, that Plaintiff was capable of low stress jobs, that Plaintiff would have "good days" and "bad days," and that Plaintiff would be absent from work about two days per month because of his sinuses. Tr. 708-09.

The ALJ concluded that Dr. Man's opinion deserved considerable weight regarding Plaintiff's carrying limitation. Tr. 29. However, the ALJ gave Dr. Man's and Dr. Murray's off-task assessments no weight. Tr. 29. The ALJ reasoned that because neither physician provided an evidentiary basis for their assessment that Plaintiff would be unable to complete sedentary work, their opinions regarding off-task assessments deserved no weight. Tr. 29.

"[T]he treating physician rule[4] generally requires deference to the medical opinion of a claimant's treating physician[.]" *Halloran v. Barnhart*, 362 F. 3d 28, 32 (2d Cir. 2004). Under the treating physician rule, the ALJ must give controlling weight to a treating physician's opinion when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *see also Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). Even though the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, the opinion of the treating physician is not afforded controlling weight where it is not consistent with other substantial evidence contained in the record. *Halloran*, 362 F.3d at 32.

---

[4] On January 18, 2017, the SSA revised the rules regarding the evaluation of opinion evidence for claims filed after March 27, 2017, and changed the way the Commissioner considers medical opinion evidence and prior administrative medical findings. *See* 20 C.F.R. § 404.1520c; 82 Fed. Reg. 5844. Because Plaintiff's applications were filed before the enactment of the new rules, the Court will apply the rules that were in effect at the time of her applications.

When the ALJ does not afford controlling weight to the medical option of a treating physician, he must comprehensively consider several factors, the so-called "*Burgess* factors," and set forth the reasons for the weight assigned to the treating physician. *Id*. An ALJ's "[f]ailure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *see also Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (failure to satisfy the treating physician rule "ordinarily requires remand to the ALJ for consideration of the improperly excluded evidence, at least where the unconsidered evidence is significantly more favorable to the claimant than the evidence considered"). However, remand is not required where the application of the correct legal principles to the record could lead only to the same conclusion. *See Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (if a review of the record assures the court "that the substance of the treating physician rule was not traversed," i.e., if the record provides "good reasons" for assigning less than controlling weight to it, the ALJ's decision should be affirmed).

Here, the ALJ gave significant weight to two medical consultants—Drs. Toor and Temple—while giving no weight to two of Plaintiff's treating physicians—Drs. Man and Murray. Tr. 29. The ALJ reasoned that because the off-task assessments from both treating physicians did not include an evidentiary basis, the opinions should be given no weight. Tr. 29.

But the record does not support the ALJ's conclusion. Rather, the record supports Dr. Man's and Dr. Murray's off-task limitations. For example, in a January 2016 appointment with Plaintiff's treating physician, Diddarjit Grewal, M.D., Plaintiff reported that he was afraid he would lose his job due to time-off from his uncontrolled asthma. Tr. 338. Consultative examiner Dr. Toor noted that Plaintiff has a slight difficulty rising from a chair and that he had shortness of breath whenever he physically exerts himself. Tr. 490, 491. Plaintiff's cardiologist, Maurice

6

Vaughn, M.D, examined Plaintiff during a three-minute stress test in which Plaintiff developed significant shortness of breath and needed his inhaler. Tr. 587. Dr. Vaughn even opined that Plaintiff had shortness of breath after "minimal exertion." Tr. 587. All of this suggests that Plaintiff would have difficulty doing many activities without a significant recovery time.

The ALJ concludes that because the record does not show "that claimant missed appointments or otherwise failed to engage in his own care due to the pervasiveness of his symptoms, and claimant's representative confirms[5] that claimant ceased work at his employer due to a layoff as opposed to health-related reasons," Plaintiff is able to work at a sedentary level. Tr. 28, 29. But Plaintiff's failure to adhere to a course of care does not mean that he can work without being off-task. Just because Plaintiff missed appointments does not mean that Plaintiff's impairments would not cause interruptions in his ability to work.

The ALJ cited opinions from Dr. Vaughn and Dr. Grewal to support his RFC that did not include any off-task limitations. Tr. 559, 605 (citing Plaintiff exercising or using the treadmill). However, in previous opinions from Dr. Vaughn, Plaintiff showed symptoms of "reduced endurance," Tr. 590, and developed shortness of breath during the first three minutes of a stress test. Tr. 587. In previous visits with Dr. Grewal, Plaintiff was not physically active, Tr. 536, claimed to have good days and bad days breathing, Tr. 536, used nebulizer four times in one day, Tr. 522, and showed shortness of breath for over three days. Tr. 506. The ALJ found that because Plaintiff's "own statements" suggest he has "high functioning activities of daily living," he is able to exercise and care for himself. Tr. 28. But. it is well settled that "[t]here is a critical difference

---

[5] Citing Plaintiff's Representative Brief, Tr. 242, the ALJ suggests that Plaintiff did not leave his job because of medical issues but was laid-off. This is inconsistent with Plaintiff's own testimony and seems to misconstrue the Representative's Brief. Plaintiff was indeed laid-off at Eastman Kodak Company before working at Gorbel Incorporated. Tr. 46, 48, 242. But Plaintiff claims to have been "let go" by Gorbel Incorporated in 2016 because of absences due asthma and heart issues. Tr. 46, 167.

between activities of daily living (which one can do at his own pace when he is able) and keeping a full-time job." *Henderson v. Berryhill*, 312 F. Supp. 3d 364, 370 (W.D.N.Y. 2018) (quoting *Harris v. Colvin*, 149 F. Supp. 3d 435, 444-45 (W.D.N.Y. 2016)); *see also Fellner v. Comm'r of Soc. Sec.*, No. 18-CV-286S, 2019 WL 4783847, at *5 (W.D.N.Y. Oct. 1, 2019) (remanding for improper discounting of plaintiff's testimony because plaintiff's activities, such as cycling and swimming, were more limited than ALJ indicated and were performed on advice of physicians to alleviate back pain).

The ALJ's recognition of Plaintiff's off-task time was critical to his formulation of the hypotheticals for the vocational expert and the vocational expert's ultimate determination of the availability of jobs that Plaintiff could perform because the vocational expert here testified that any employment with off-task time greater than five percent would not be tolerated. Tr. 69; *see Beck v. Colvin*, No. 6:12-CV-06495 (MAT), 2013 WL 5533571, at *6 (W.D.N.Y. Oct. 7, 2013) ("Vocational experts in Social Security cases have testified that missing three or more days of work per month renders a claimant unemployable, as that level of absenteeism is beyond the bounds of reasonable employer tolerance."). The ALJ's failure to properly weigh Dr. Man's and Dr. Murray's off-task assessments was not harmless error. Had the ALJ incorporated Dr. Man's and Murray's off-task limitation assessments in the RFC, the ALJ would have devised a different RFC determination. *Pamela R. Comm'r of Soc. Sec.*, No. 19-cv-734-FPG, 2021 WL 1546146, at *5 (W.D.N.Y. Apr. 20, 2021) ("Because the ALJ had not given more weight to the treating physician, . . . the error is not harmless."); *Manuel v. Comm'r of Soc. Sec.*, No. 1:19-CV-00023 EAW, 2020 WL 2703442, at *4 (W.D.N.Y. May 26, 2020) (the ALJ's failure to consider the treating physician's opinion was not harmless because the restrictive limitations identified by the

physician could have resulted in a finding of disability or at a more restrictive RFC finding if given proper consideration by the ALJ).

Finally, Plaintiff asserts that the ALJ erred when rejecting Dr. Murray's opinion that Plaintiff should avoid *all* exposure to cigarette smoke, perfumes, fluxes, solvents/cleaners, fumes/odors/gases, dust, and chemicals.  The ALJ only limited Plaintiff to exposure consistent with a normal work environment.  During the hearing, the ALJ asked the vocational expert a hypothetical question about whether a claimant with the same age, background, and education as Plaintiff could complete work with having no exposure to any levels of dust, fumes, gases, and other pulmonary irritants.  Tr. 68-69.  The vocational expert answered that a person could not perform Plaintiff's past work due to the lack of tolerance for dust or odors that would typically be present in an office setting.  Tr. 69.  This hypothetical accounted for Dr. Murray's opinion that Plaintiff would be more limited in ability to tolerate dust, gases, and fumes than the average sedentary workplace might allow. "Where an individual can tolerate very little noise, dust, etc., the impact on the ability to work would be considerable because very few job environments are entirely free of irritants, pollutants, and other potentially damaging conditions."  Social Security Ruling ("S.S.R.") 85-15, Titles II & XVI: Capability to do Other Work—The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments, 1985 WL 56857, at *8 (S.S.A. Jan. 1, 1985).  Thus, had the ALJ credited Dr. Murray's opinion regarding Plaintiff's need to avoid pulmonary irritants, Plaintiff might be rendered disabled.  Tr. 708.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings, ECF No. 11, is GRANTED, the Commissioner's motion for judgment on the pleadings, ECF No. 13, is DENIED, and the matter is REMANDED to the Commissioner for further administrative

proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court shall enter judgment and close this case.

IT IS SO ORDERED.

Dated: August 30, 2021
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York